LOCAL 8A–28A WELFARE AND 401(K) RETIREMENT FUNDS, by their Trustees: Joseph Perez, Hector Lopez, Rubin Socastro, Thomas Hodgson, Douglas Golan, Richard Croll, Michelle Bodnar, Laura Foster and Robert Fabrizio, Plaintiffs,

v.

GOLDEN EAGLES ARCHITECTURAL METAL CLEANING AND REFINISHING, an Illinois Corporation, Defendant.

No. 02 Civ.9723 RWS.

United States District Court, S.D. New York.

Aug. 7, 2003.

Roger H. Madon and Associates, New York, NY (Roger H. Madon, of counsel), for plaintiffs.

Steven T. Kiousis & Associates, Southfield, MI (Steven T. Kiousis, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Golden Eagles Architectural Metal Cleaning and Refinishing ("Golden Eagles") has moved pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) to dismiss the complaint of plaintiffs Local 8A–28A Welfare and 401(k) Retirement Funds ("Local 8A–28A Funds"), which alleges the violation of Section 515 of the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1145, and of the collective bargaining agreement between Local 8A–28A and Golden Eagles. For the following reasons, the motion is denied.

### Background

On December 6, 2002, the Local 8A–28A Funds filed a complaint alleging that Golden Eagles failed to submit to an audit of its employment payroll and other related records, including cash disbursement journals, for the period January 1, 1998 through and including September 30, 2002. The Local 8A–28A Funds allege that Golden Eagles thereby violated § 515 of ERISA as well as the Agreement Between Metal Polishers Production and Novelty Workers Union Local 8A–28A and Coalition of Metal Finishers and Golden Eagles, entered into as of July 18, 2001 (the "Collective Bargaining Agreement") and the Restated Agreement and Declaration of Trust of the Metal Polishers Union Local 8A–28A Welfare Fund, which became effective January 1, 1996, and the Restated Agreement and Declaration of Trust of the Metal Polishers Union Local 8A–28A Annuity Fund, which also became effective January 1, 1996 (collectively, the "Trust Agreements"). The Local 8A–28A Funds seek to compel Golden Eagles to submit to the audit that it has allegedly failed to do thus far.

On June 6, 2003, Golden Eagles moved to dismiss on the grounds that the Court lacks personal jurisdiction over it, that venue is improper, and that all claims arising under the Collective Bargaining Agreement must be submitted to arbitration. The Local 8A–28A Funds filed opposition papers on June 17, 2003. Oral argument was heard on June 18, 2003, at which time the motion was considered fully submitted.

### DISCUSSION

### Standard of Review

Plaintiffs bear the burden of establishing that the court has jurisdiction over a defendant when served with a Rule 12(b)(2) motion to dismiss. *Distefano v. Carozzi North America Inc.,* 286 F.3d 81, 84 (2d Cir.2001); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994). Because an evidentiary hearing has not been held, the plaintiffs need only make a *prima facie* showing of jurisdiction through the complaint's allegations and affidavits in order to defeat the motion to dismiss. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Network Enterprises, Inc. v. APBA Offshore Prods. Inc.,* No. 01 Civ. 11765, 2002 WL 31050846, at *8 (S.D.N.Y. Sept.12, 2002).

In reviewing a 12(b)(6) motion, courts must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plead-

er." *Grandon v. Merrill Lynch & Co. Inc.,* 147 F.3d 184, 188 (2d Cir.1998) (*citing Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)). However, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 534 (2d Cir.1993) (*quoting Moore's Federal Practice* ¶ 12.07[2.–5], at 12–63 to 12–64 (2d ed.1993)). The complaint may only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Desiano v. Warner–Lambert Co.,* 326 F.3d 339, 347 (2d Cir. 2003).

■ Review must be limited to the complaint and documents attached or incorporated by reference thereto. *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). In this context, the Second Circuit has held that a complaint is deemed to "include ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000).

### Personal Jurisdiction Exists Over Golden Eagles

■ Golden Eagles argues that the Court lacks personal jurisdiction over it because it lacks sufficient minimum contacts with the State of New York. The Local 8A–28A Funds counter that the Court has personal jurisdiction over Golden Eagles pursuant to 29 U.S.C. § 1132(e), which is the jurisdictional provision of ERISA. Subsection 2 provides:

Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

The Local 8A–28A Funds have alleged in their complaint that both Funds maintain their principal place of business and are administered in the Southern District of New York.

Several courts in this District have held that the nationwide service provision of § 1132(e)(2) confers personal jurisdiction over a defendant so long as the defendant has minimum contacts with the United States. *See, e.g., American Medical Ass'n v. United Healthcare Corp.,* 26 Employee Benefits Cas. 1897, 2001 WL 863561, at *4 (S.D.N.Y. July 31, 2001); *I.L.G.W.U. Retirement Fund v. Meredith Grey, Inc.,* 986 F.Supp. 816, 822 (S.D.N.Y.1997); *Hetchkop v. George Harms Excavating Corp.,* No. 92 Civ. 2239, 1993 WL 88106, at *2 (S.D.N.Y., March 26, 1993) ("Long settled law in the Second Circuit provides that where federal jurisdiction is conferred by a federal statute in which Congress provided for nationwide service of process, defendant is subject to personal jurisdiction without regard to state long-arm statutes.") (*citing Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974)). *But see Chichelo v. Hoffman–La Roche, Inc.,* 97 Civ. 4591, 1997 WL 654637, at *1–2 (S.D.N.Y. Oct.21, 1997) (plaintiff failed to establish that court had personal jurisdiction over defendant under § 1132(e)(2) because defendant did not have sufficient minimum contacts with New York).

Three Circuits have held that Section 1132(e)(2) confers nationwide personal jurisdiction on a defendant regardless of the contacts of that defendant with the forum state. *See Medical Mutual of Ohio v. deSoto,* 245 F.3d 561, 567 (6th Cir.2001); *Board of Trustees, Sheet Metal Workers'*

*Nat'l Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1037 (7th Cir.2000) ("Section 1132(e) comports with the Constitution and provided the Eastern District of Virginia with personal jurisdiction over [defendant] even on the assumption that neither has any 'contacts' with Virginia."); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825 (5th Cir.1996). The Sixth Circuit affirmed the district court's holding that § 1132(e)(2),

> alters the personal jurisdiction calculus established by *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Rather than asking whether the defendant has sufficient minimum contacts with the forum state for the exercise of jurisdiction to comport with traditional notions of fair play and substantial justice, as courts do when relying on a state's long-arm statute to establish territorial jurisdiction, a court should ask whether the defendant has sufficient minimum contacts with the United States.

*Medical Mutual,* 245 F.3d at 566. The Sixth Circuit based its decision on the national service of process provision in § 1132(e)(2). It held that nationwide personal jurisdiction was not inconsistent with a defendant's "due process right not to be subject to extra-territorial jurisdiction unless [the defendant] has a sufficient relationship with the state asserting jurisdiction." *Id.* at 567. The situation is different when,

> a federal court sitting pursuant to federal question jurisdiction over a U.S. citizen or resident based on a congressionally authorized nationwide service of process provision ... In such cases, the individual is not being subject to extra-territorial jurisdiction, because the individual is within the territory of the sovereign—the United States—exercising jurisdiction.

*Id.* The Seventh Circuit held similarly that "[n]o limitations on sovereignty come into play when all litigants are citizens. It is the same "judicial Power," whether the "court sits in Indianapolis or Alexandria." *Elite Erectors,* 212 F.3d at 1036.

While the Second Circuit has not directly addressed the issue of whether § 1132(e)(2) provides for nationwide personal jurisdiction over a defendant, it has held that 29 U.S.C. § 1451(d), the jurisdictional provision of the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1381, 183, 1391 (1988), which the Seventh Circuit has described as the "counterpart" to § 1132(e), *see Elite Erectors,* 212 F.3d at 1035, permits the district court to exercise "personal jurisdiction over the defendant insofar as the MPPAA includes a provision for nationwide service of process." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056 (2d Cir.1993). Following the rationale of the *Herrmann* court, personal jurisdiction may be exercised over Golden Eagles as a result of the nationwide service of process provision in § 1132(e)(2).

### Venue is Proper

█ Section 1132(e)(2) also functions as a venue provision. It states, in relevant part, that "an action ... may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." *See also Bird v. Shearson Lehman/American Express, Inc.,* 871 F.2d 292, 297 (2d Cir.), *rev'd on other grounds,* 493 U.S. 884, 110 S.Ct. 225, 107 L.Ed.2d 177 (1989) (under § 1132(e)(2), "a wide choice of venue is allowed."); *Bona v. Barasch,* No. 01 Civ. 2289, 2003 WL 1395932, at *36 (S.D.N.Y. March 20, 2003) ("ERISA has its own venue provision ... 29 U.S.C. § 1132(e)(2)."). Because the Local 8A–28A Funds have alleged that both Funds are administered in the Southern District

of New York, the Local 8A–28A Funds' ERISA claims may not be dismissed for improper venue.

### The Local 8A–28A Funds' Claims Need Not be Submitted to Arbitration

Golden Eagles argues that the action by the Local 8A–28A Funds must be dismissed because the Funds have agreed to submit all claims to arbitration. In support, Golden Eagles cites Article 32 of the Collective Bargaining Agreement, which mandates that all claims unable to be settled through a grievance procedure "shall be submitted for arbitration to the Chicago area office of the American Arbitration Association ... and the decision of the arbitrator within the scope of his jurisdiction under the Agreement shall be final and conclusive upon parties hereto." The Local 8A–28A Funds argue conversely that the Funds are independent non-signatory entities, and are therefore not bound by the terms of the Collective Bargaining Agreement. The Local 8A–28A Funds also argue that even if the Collective Bargaining Agreement applied to the present dispute, Golden Eagles failed to follow the proper procedures required in order to arbitrate a dispute, including the filing of a grievance followed by the submission of the matter to arbitration within 90 days of filing the grievance.

■■■■■ Disputes between an employer and the trustees of employee-benefits trust funds are not subject to a presumption of arbitrability. *See Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 372, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). In disputes between a union and an employer, "[s]uch a presumption furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with parties' presumed objectives in pursuing collective bargaining." *Id.* Arbitration in this context "promotes labor peace because

it requires the parties to forgo the economic weapons of strikes and lockouts." *Id.* But because trustees do not have recourse to such weapons, the Supreme Court has held that,

> the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements.

*Id.* Absent such a presumption, the agreements between the parties must evidence an intent to require arbitration of disputes between trustees and employers. *Id.*

■■■■■ Golden Eagles acknowledges that the Collective Bargaining Agreement is between Golden Eagles and the Local 8A–28A, AFL–CIO and the Coalition of Metal Refinishers. Golden Eagles has not contested that the Local 8A–28A Funds are distinct entities from the Local 8A–28A union. The authority of the Local 8A–28A Funds to effectuate the collection and preservation of funds from employers is laid out in the Trust Agreements. Each of the Trust Agreements contains an identically worded provision empowering the Trustees to,

> take whatever proceedings may be proper and necessary in their discretion for enforcement of an Employer's obligations including but not limited to proceedings at law and in equity ...

Art. VII, Section 4 (both agreements). Article 32 of the Collective Bargaining Agreement requires the arbitration of "any dispute between the Company and *the Union* as to the meaning, application, performance or operation of this Agreement." (emphasis added). Just as in *Schneider,* then, "[n]either the terms of the trust agreements nor those of the collective-bargaining agreements contain any [arbi-

tration] requirement [applicable to the trustees], and the circumstances surrounding the execution of each suggest that none should be inferred." 466 U.S. at 372–73, 104 S.Ct. 1844. As in *Schneider*, the authority of the trustees to seek legal remedies against the Employer is nowhere "expressly conditioned on the exhaustion of any contractual remedies that might be found in the collective-bargaining agreements of the individual employers." *Id.* at 373, 104 S.Ct. 1844. Moreover, the interests of the trustees in *Schneider* are the same as the plaintiffs in this case:

> These are multiemployer trust funds. Each of the participating unions and employers has an interest in the prompt collection of the proper contributions from each employer. Any diminution of the fund caused by the arbitration requirements of a particular employer's collective-bargaining agreement would have an adverse effect on the other participants. The enforcement mechanisms established in the trust agreements protect the collective interests of the parties from the delinquency of individual employers by allowing the trustees to seek prompt judicial enforcement of the contribution requirements. It is unreasonable to infer that these parties would agree to subordinate those mechanisms to whatever arbitration procedures might be required by a particular employer's collective-bargaining agreement.

*Id.* at 373–74, 104 S.Ct. 1844. *See also Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 576, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). Further, in light of the fact that the Collective Bargaining Agreement permits only the Local 8A–28A union or Golden Eagles to invoke the arbitration process, it would be "unreasonable to infer that the parties to these agreements, or to the trust agreements, intend-

ed the trustees to rely on the Union to arbitrate their disputes with the employer." *Schneider*, 466 U.S. at 375, 104 S.Ct. 1844; *see also O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 168 (2d Cir.1984) (upholding district court's decision that arbitration provision did not apply to trustees because it explicitly referred only to claims by the employer or the union). The Local 8A–28A Funds are therefore not obligated to arbitrate their dispute with Golden Eagles pursuant to the terms of the Collective Bargaining Agreement.

## Conclusion

The Court may exercise personal jurisdiction over the defendant, and venue is proper. Further, the Collective Bargaining Agreement between the Local 8A–28A union and Golden Eagles does not obligate the Local 8A–28A Funds to submit its dispute to arbitration. Accordingly, the defendant's motion to dismiss is denied.

It is so ordered.